IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| James D. Ingstad, Victoria S. Ingstad, Thomas E. Ingstad, Fargo Trading, LLC, and TEI Trading, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | **MEMORANDUM OPINION AND ORDER STAYING PROCEEDINGS** |
| vs. | ) ) | |
| Grant Thornton, LLP, Deutsche Bank Securities, Inc. d/b/a Deutsche Bank Alex Brown, Deutsche Bank AG, David Parse, Bricolage Capital, LLC, Andrew D. Beer, Samyak C. Veera, and Equilibrium Currency Trading, LLC, | ) ) ) ) ) ) ) ) | Civil File No. 3:05-cv-98 |
| Defendants. | ) | |

Before this Court are a number of motions regarding arbitration. Defendants Grant Thornton, LLP ("Grant Thornton"), Deutsche Bank Securities, Inc., d/b/a Deutsche Bank Alex. Brown and David Parse (collectively, "Deutsche Bank"), and Equilibrium Currency Trading, LLC ("Equilibrium") each move to stay these proceedings (Docs. #65, #87, and #82, respectively) and compel arbitration. Plaintiffs filed memoranda in opposition to the above motions (Docs. #99, 100, 101), and Grant Thornton (Doc. #112), Deutsche Bank (Doc. # 110), and Equilibrium (Doc. #106) filed replies to Plaintiffs' memoranda. Oral argument was held on November 2, 2006.

**FACTS**

This case involves a tax shelter scheme gone awry. On September 8, 2000, James Ingstad, on behalf of Fargo Trading, LLC, and TEI Trading, LLC, entered into Account Agreements with Deutsche Bank in order to participate in a tax savings strategy created and marketed by Deutsche Bank and others. The strategy, referred to as "COINS," involved buying and trading digital options

1

on foreign currency. At the time the Plaintiffs signed the Agreements, the IRS had issued several notices stating transactions lacking in "economic substance," created to generate tax losses, were illegal. The substance of these notices has since become IRS regulations. Plaintiffs were assured by lawyers affiliated with the Defendants that the strategy was, in fact, legal. The strategy was implemented. Plaintiffs' 2000 tax returns were audited, and they were required to pay nearly $2 million in back taxes and penalties.

Plaintiffs filed suit in state court alleging a variety of claims, including breach of fiduciary duty, fraud, negligence, breach of contract, negligent misrepresentation, and civil conspiracy against all Defendants, jointly and severally. Defendants removed the action to this Court, which denied a subsequent motion for remand. (Doc. #63).

Grant Thornton, Deutsche Bank, and Equilibrium moved to compel arbitration in April and May, 2006. On June 6, 2006, a First Amended Class Action Complaint was filed in United States District Court for the Southern District of New York in the already pending case, <u>Kissell v. Deutsche Bank AG, et al.</u>, No. 06-cv-2045 (S.D.N.Y. filed Mar. 15, 2005). The class was more broadly defined in the Amended Complaint such that Plaintiffs are putative members of the class.[1] Counsel for the <u>Kissell</u> class action and the instant case are virtually identical. Plaintiffs argue the <u>Kissell</u>

---

[1] The class was defined in the amended complaint as:
All Persons who, from January 1, 1999, through December 31, 2003, inclusive, either (1) consulted with, relied upon, or received oral or written opinions or advice from Deutsche Bank AG and/or DB Alex Brown, David Parse, Todd Clendening, Craig Brubaker or any other Deutsche Bank AG or DB Alex Brown employee or agent concerning any one or more of the Tax Strategies and who in whole or in part implemented, directly or indirectly, any one or more of the Tax Strategies or (2) entered into FX Contracts with, took out loans ("Loans") from, or opened an account with Deutsche Bank AG and/or DB Alex Brown between January 1, 1999, and December 31, 2003, inclusive, in connection with that Person's participation in any one or more of the Tax Strategies, and (3) the legal representatives, heirs, successors, and assigns of all Persons described in (1) and (2). The "Class" includes, without limitation, the individuals, partnerships, limited liability companies, trusts, corporations and other legal entities that were formed in connection with or that engaged in or were utilized in any one or more of the Tax Strategies. The Class excludes as members any person who participated in the promotion or implementation of the Tax Strategies to others.

class action prohibits arbitration and allows individual litigation to proceed. Defendants argue a stay is appropriate, pending outcome of the class action suit.

## ANALYSIS

Deutsche Bank

The Account Agreements set up between Plaintiffs and Deutsche Bank contain clauses requiring resolution of disputes through arbitration. Each Agreement states:

> 19. Arbitration
>
> I understand that: (1) Arbitration is final and binding on the parties. (2) The parties are waiving their right to seek remedies in court, including the right to jury trial. (3) Pre-arbitration discovery is generally more limited than and different from court proceedings. (4) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. (5) The panel of arbitrators would typically include a minority of arbitrators who were or are affiliated with the securities industry.
>
> I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with or through you, only before the New York Stock exchange or the National Association of Securities Dealers Regulation, Inc., at my election. I agree that I shall make my election by registered mail top you, at [address]. If my election is not received by you within ten (10) calendar days of a written request from you that I make an election, then you may elect the forum before which the arbitration shall be held.
>
> Neither you nor I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the punitive [sic] class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver or [sic] any rights under this agreement except to the extent stated herein.

(Doc. #1). Additionally, the statement "THIS AGREEMENT CONTAINS A PRE-DISPUTE

3

ARBITRATION CLAUSE AT PARAGRAPH 19" was printed immediately above each signature line.

In its initial motion, Deutsche Bank moved to compel arbitration in accordance with the clause in the signed agreement because of the public policy favoring arbitration and the clause's applicability and enforceability under the Federal Arbitration Act ("FAA"). Plaintiffs responded, arguing unconscionability of the contract, and alleged that as members of a putative class they cannot be compelled to arbitrate the dispute. At oral argument, Deutsche Bank acknowledged its inability to compel arbitration considering Plaintiffs' putative class member status; in the alternative, Deutsche Bank argued for a stay.

As indicated by this Court's Order Denying Remand (Doc. #63), this action is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"). 9 U.S.C. §§ 2, 202. Chapter 2 of the Convention provides that a court with jurisdiction "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. § 206. A stay may be granted during the pendency of the proceedings. 9 U.S.C. § 3.

Plaintiffs acknowledge a court's duty to compel arbitration if the claim at issue is "within the scope of a valid, enforceable agreement to arbitrate." (Doc #99, p. 2); 9 U.S.C. §§ 3, 4. However, Plaintiffs argue their status in a putative class in the pending class action law suit, <u>Kissell</u>, No. 06-cv-2045 (S.D.N.Y. filed Mar. 15, 2005), prevents them from being brought into arbitration. The National Association of Securities Dealers ("NASD") prohibits enforcement of an arbitration agreement against an individual who is a member of a putative or certified class with respect to

claims encompassed by the class action at issue. NASD Rule 10301. The Securities and Exchange Commission has stated the intent of Rule 10301 is to reduce "wasteful, duplicative litigation." SEC Release No. 34-31371; 1992 WL 316267. This arbitration agreement, by its own terms and according to NASD rules, may not be enforced until the class certification is denied, the class is decertified, or the individual is excluded from the class by court order or opting out. (Doc. # 88-2, p. 3).

Deutsche concedes that Plaintiffs' status as putative class members prohibits Deutsche from compelling arbitration; however, Deutsche argues Plaintiffs may not maintain both actions simultaneously. Deutsche argues that until Plaintiffs choose either to pursue their claims in the class action suit or submit to arbitration, a stay must be granted by the court. Courts have broad discretion to stay proceedings incident to their power to control the docket. Clinton v. Jones, 520 U.S. 681, 706 (1997). Granting a discretionary stay in this situation is in line with numerous opinions out of other districts. See MLDX Investments, LLC, v. Parse, 2006 WL 1579597 (holding the Kissell class action barred arbitration; thus, a stay was appropriate); Slatnick v. Deutsche Bank, No. 04-cv-2288 (S.D. Cal. Mar. 15, 2006) (granting stay and compelling arbitration after class action suit was dismissed); Hansen v. KPMG, LLP, No. 04-cv-10525 (C.D. Cal. Mar. 29, 2005) (ordering temporary stay pending resolution of class action suit); Plyler v. BDO Seidman, No. 04-2146 (W.D. Tenn. Apr. 11, 2005) (ordering stay pending resolution of class action); Crunk v. BDO Seidman, No. 2:04-cv-2573 (W.D. Tenn. May 24, 2005) (granting stay until resolution of class action). The Court is particularly persuaded by the reasoning in Wilson v. Deutsche Bank. No. 1:05-cv-3474 (N.D. Ill. Mar. 20, 2006). The Wilson Court concluded, "Accepting plaintiff's position would mean that the existence of a putative class action would result in more individual litigation in the courts, not less,

just the opposite of the desired intent." Id. at 5.  Plaintiffs' argument is not only contrary to the intent of NASD Rule 10301, but their interpretation would render valid, voluntarily entered arbitration agreements illusory.  Any party with whom arbitration is sought would be empowered to file a class action suit in order to litigate individual claims.  It is simply illogical to conclude the NASD intended to create a "Get Out of Arbitration Free" policy when it stated clearly its intent to reduce, not increase, litigation of individual claims.

Plaintiffs alternatively argue that the arbitration agreement is unenforceable due to unconscionability.  In deciding whether an arbitration clause is unconscionable, courts apply state law principles governing contract formation.  Pro Tech Industries, Inc. v. URS Corp., 377 F.3d 868, 872 (8th Cir. 2004) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944).  This arbitration agreement is governed by New York law, which states:

> A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made. . . The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice.  The focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power. . . [A substantive unconscionability] question entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged.

Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824 (N.Y. 1988) (citations and quotations omitted).

Procedural unconscionability is not present here.  Plaintiffs are experienced investors who were free to invest however and with whomever they chose.  Additionally, the arbitration agreement is in normal print and is referenced above the signature line on each page.  The Plaintiffs' claim of substantive unconscionability rests in the arbitration agreement's requirement that any controversies

be arbitrated before the New York Stock Exchange or National Association of Securities Dealers Regulation, Inc. Plaintiffs allege these organizations are not capable of handling a case such as this and are unlikely to be fair to Plaintiffs, an assertion largely supported by the 43% success/win rate for customers compelled to NASD arbitration. Mere speculation by plaintiffs does not give rise to a finding of substantive unconscionability. There is no indication that the NASD and NYSE are not fully capable of arbitrating this dispute in a fair, professional manner. Plaintiffs do not direct the Court to any case or authority indicating such and, in fact, this argument has previously been rejected in another district. See MLDX, 2006 WL 1579597.

**Equilibrium**

Equilibrium moves for a stay pending arbitration or, in the alternative, dismissal for lack of personal jurisdiction. By stipulation of the parties, the personal jurisdiction argument will not be decided by the Court at this time but may be raised at a later date.

Plaintiffs entered into Currency Management and Trading Authorization Agreements with Equilibrium. Each of those agreements contained an arbitration clause at paragraph 17, stating:

> **ARBITRATION.** Any controversy arising out of or relating to this Agreement or the breach thereof, shall be settled by arbitration conducted in New York, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Any arbitration hereunder shall be before at least three arbitrators and a decision of the majority of them shall be final and binding. Any judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

Plaintiffs argue this agreement is unenforceable due to 1) unconscionability, 2) judicial estoppel, and 3) inapplicability.

Plaintiffs' unconscionability claim is virtually identical to that asserted against Deutsche Bank, alleging unequal bargaining power, lack of negotiation, etc. As discussed, Plaintiffs are savvy businessmen and there is no indication that unconscionability exists.

7

Plaintiffs argue judicial estoppel prevents Equilibrium from arbitrating this claim. Judicial estoppel is appropriate as a bar when a party 1) takes a particular position in a legal proceeding, and 2) succeeds in maintaining that position. Stallings v. Hussman Corp., 447 F.3d 1041, 1047 (8th Cir. 2006). Thereafter, the party may not take an inconsistent position merely because his interests have changed. Id. Here, Plaintiffs argue judicial estoppel prevents Equilibrium from arbitrating this dispute because Equilibrium has attempted to opt out of arbitration in a similar case, stating, "[W]e do not believe that Equilibrium is a proper party to this arbitration (or any other proceeding)." (See Doc. #100, page 5). Plaintiffs express concern that, if compelled to arbitrate with Equilibrium, Equilibrium will attempt to remove itself from that arbitration as well. Plaintiffs also express concern over Equlibirum's failure to fully cooperate in the discovery process. Although the Court is troubled by these concerns and strongly urges Equilibrium to cooperate fully with discovery, these concerns are inadequate to sustain a judicial estoppel argument. Equilibrium has not "succeeded" in its position; rather, it has simply asserted a defense. Additionally, Equilibrium discloses it fully intends to assert the same defense - that it no longer exists as a business entity - whether in arbitration or in a court proceeding.

Plaintiffs' final argument is that the arbitration agreement is not applicable to the claims asserted in the Complaint. The arbitration agreement at issue is worded broadly, requiring arbitration of "[a]ny controversy arising out of or relating to" the agreement. Nationwide, there is a strong policy in favor of arbitration. Dobbins v. Hawk's Enters., 198 F.3d 715, 717. Thus, arbitration clauses are interpreted such that any doubts are resolved in favor of arbitration. C.D. Partners, LLC, v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005). Broadly worded arbitration clauses are interpreted to cover tort claims arising out of the same facts covered by the contract between the

parties. Id. at 800. Plaintiffs' allegations of fraud, conspiracy, negligence, etc., would not have arisen but for this agreement. These disputes are appropriately resolved through arbitration.

**Grant Thornton**

Defendant Grant Thornton is not party to an arbitration agreement with Plaintiffs; rather, Grant Thornton moves to compel arbitration as a non-signatory to the Deutsche Bank - Ingstad Agreements.

The Eighth Circuit has established a lower threshold when a non-signatory wishes to enforce an arbitration agreement against a signatory to that agreement than would be required for a signatory to force a non-signatory into arbitration. C.D. Partners, 424 F.3d at 780. In C.D. Partners, the Court held that a willing non-signatory may enforce an arbitration clause against an unwilling signatory under the alternative estoppel theory, provided there is a close relationship among the persons, wrongs, and issues involved. Id.

Plaintiffs, relying on authority from other circuits, argue alternative estoppel is inapplicable here because there is not a sufficiently close relationship between Grant Thornton and Deutsche Bank. It is true that Grant Thornton did not rely on the Deutsche Bank agreement in establishing the terms of its relationship with Plaintiffs. Additionally, it is undisputed that Grant Thornton and Deutsche Bank have no "legal" relationship, such as parent/subsidiary or guarantor/guarantee. However, support for the alternative estoppel theory rests in the allegations made by Plaintiffs in their complaint. The Second Circuit has deemed the "close relationship" required to allow a non-signatory to compel arbitration may be found in the structure of the complaint itself. Denney v. BDO Seidman, 412 F.3d 58, 70 (2d Cir. 2005). In Denney, the complaint alleged that Defendants acted in concert to defraud Plaintiffs and that the non-signatory defendant's fraud arose in

9

connection with the signatory's tax-strategy advice.  Id.  The Denney Court found a sufficiently close relationship between the signatory and non-signatory was established by the complaint, concluding, "[P]laintiffs cannot now escape the consequences of [the complaint's] allegations by arguing the [two] defendants lack the requisite close relationship."  Id.  This reasoning was also employed by the Eleventh Circuit Court of Appeals in MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999).

Here, seven of the eight claims for relief are "by all Plaintiffs against all Defendants." Although only the civil conspiracy claim specifically alleges Defendants acted "in concert," the complaint contains countless allegations indicating a unified scheme was created and perpetrated by the Defendants as a group.  Granting the motion by Grant Thornton to stay, pending arbitration, is reasonable considering the wording of the complaint and is consistent with recent decisions handed down in other districts.  See Conwill v. Arthur Andersen, LLP, 820 N.Y.S.2d 842 (2005); Hansen v. KPMG, LLP, No. 04-cv-10525 (C.D. Cal. Mar. 25, 2005).

## DECISION

The Court hereby **ORDERS**  a stay in these proceedings until further Order of the Court. Due to the pending Kissell class action, the Court declines to compel arbitration at this time because it is premature.  Therefore, the motions so requesting are denied without prejudice and may be re-raised at a later date.

**IT IS SO ORDERED.**

Dated this 19th day of December, 2006.

      /s/    Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court